## A95A1712. JOHNSON v. AUTOZONE, INC.
(465 SE2d 463)

ANDREWS, Judge.

Johnson was injured when she slipped and fell in a puddle of oil in the parking lot of an Autozone, Inc. store. She sued Autozone to recover damages resulting from her injuries claiming Autozone negligently failed to keep the store premises in a safe condition for invitees. She brings this appeal from the trial court's order granting summary judgment in favor of Autozone.

Johnson drove to the Autozone store with a friend and parked her car in the store's parking lot. It was between 7:00 and 8:00 p.m. and dark outside when she arrived at the store. Johnson got out of her car, took three or four steps across the parking lot toward the

entrance of the store, and slipped and fell in a large puddle of oil. The oil was puddled in a vacant handicapped parking space adjacent to where Johnson had parked her car. She testified on deposition that, although there was lighting in the parking lot, there was not enough light to enable her to see the large dark puddle of oil before she stepped into it and fell. The friend who accompanied Johnson to the store deposed that when she got out of the car after Johnson fell, "I looked down on the ground to see what she had, you know, slipped on and why she had fell in something and I seen a big old black spot of motor oil. . . ."

Two Autozone employees were working at the store on the night of the fall. Both gave affidavits stating Johnson's friend reported the fall when it happened, that they went out to the parking lot and spoke to Johnson immediately after the fall, that the parking lot was well lighted, and that they could clearly see the large puddle of motor oil spilled out in a handicapped parking space. One of the employees stated there was about three to five quarts of motor oil in the parking space "as if someone had completely drained the oil out [of] a car." The employee further stated: "At the time that I observed the oil in the parking lot, it was still running down the slope of the parking lot. However, the puddle of oil had not yet reached beyond the limits of the handicap parking space where it had been deposited." Based on his observations of the oil, the employee stated it was his opinion the oil had been deposited in the parking space less than five minutes prior to the time he observed it. The same employee also stated that about 15 to 20 minutes prior to Johnson's fall he had gone out to the parking lot to measure some windshield wipers on a customer's car. He stated that, although he could have seen the oil spill from where he was working, he did not see any oil on the ground at that time. Both Autozone employees stated they had no knowledge of the spilled oil until they observed it after Johnson fell.

Johnson's friend further deposed that, while she and Johnson were sitting in the parked car prior to the fall, she saw a man walk by the front of the car who slowed down and appeared to look in the direction of the oil spill. She stated that if he looked in that direction he would have seen the oil spill. Contrary to the dissent's claim, the testimony of Johnson's friend (Cox) did not provide evidence that the man she saw was an Autozone employee. Cox was unable to identify the man, and she never testified that the man she observed was an Autozone employee. The record is undisputed that only two Autozone employees were employed at the store at the time of the accident. Cox further testified that immediately after Johnson fell she saw two Autozone employees in the store and at least one customer and that none of these people appeared to be the man she saw walking past the oil spill. Although Johnson's friend deposed that she did not know

how long the oil had been there, she said she saw tire tracks through the puddle and footprints in it but not leading away from it.

"[I]n order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant [s]he slipped and fell on a foreign substance on the defendant's [premises], the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). Although Johnson's friend and both Autozone employees stated the puddle of oil was visible, Johnson testified there was not enough light in the parking lot for her to see the puddle. Assuming a factual issue was presented as to whether in the exercise of ordinary care Johnson should have seen the puddle of oil before stepping in it, the trial court correctly granted summary judgment in favor of Autozone because there was no evidence Autozone had actual or constructive knowledge of the puddle of oil in the parking lot prior to Johnson's fall.

There is no evidence any Autozone employee had actual knowledge of the spilled oil prior to Johnson's fall. Constructive knowledge may be established in two ways. First, "[c]onstructive knowledge may be inferred where there is evidence that an employee of the owner was in the immediate vicinity of the dangerous condition and could easily have noticed and removed the hazard." (Citations and punctuation omitted.) *Winn-Dixie of Greenville v. Ramey*, 186 Ga. App. 257, 259 (366 SE2d 785) (1988). There is no evidence an employee of Autozone was in the immediate vicinity of the spilled oil and could have seen and removed the hazard prior to Johnson's fall. Accordingly, any recovery in this case must be based on the second method of establishing constructive knowledge which is premised on a claim that the puddle of oil was on the premises for a long enough period of time that Autozone should have discovered it. *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 809 (406 SE2d 234) (1991).

A proprietor has a duty to exercise ordinary care to keep the premises safe for invitees, which includes "a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises." (Citations and punctuation omitted.) *Strickland v. Howard*, 214 Ga. App. 307, 308 (447 SE2d 637) (1994). However, "[i]t is well settled that a proprietor is under no duty to patrol the premises continuously in the absence of facts showing that the premises are unusually dangerous." *Mazur v. Food Giant*, 183 Ga. App. 453 (359 SE2d 178) (1987). Under the second method of proving constructive knowledge, if the evidence shows that a foreign substance has

remained on the floor of the premises for a sufficient period of time that it should have been discovered and removed in a reasonable inspection of the premises, then an inference arises from the breach of the duty to inspect the premises and keep it safe that the proprietor has constructive knowledge of the presence of the foreign substance. *Food Giant v. Cooke,* 186 Ga. App. 253, 255 (366 SE2d 781) (1988). Of course, since the true basis of the proprietor's liability to an invitee is the proprietor's superior knowledge of the hazard or defect which was the proximate cause of the injury, an injured invitee may recover on the basis of the proprietor's constructive knowledge of the hazard only if the invitee's knowledge of the hazard did not equal or exceed the proprietor's knowledge. *Kroger Co. v. Bailey,* 212 Ga. App. 568, 569 (442 SE2d 480) (1994).

In seeking summary judgment, Autozone had the burden of showing there was no genuine issue of fact with respect to its lack of constructive knowledge of the puddle of oil. It could do this by either producing evidence demonstrating a lack of constructive knowledge or by pointing out the absence of evidence in the record to support the nonmovant's claim that it had constructive knowledge. *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991); *Jackson v. Wal-Mart Stores,* 206 Ga. App. 165, 168 (424 SE2d 845) (1992).

Autozone both pointed out the absence of any evidence that it had constructive knowledge based on a claim that an employee was in the vicinity of the oil spill and produced affidavits showing that no employee was in the vicinity in a position to have seen it prior to Johnson's fall. Autozone also produced evidence that it did not have constructive knowledge on the basis that the oil spill had been on the premises for a sufficient length of time that it should have been discovered by a reasonable inspection of the premises.

Autozone produced uncontradicted evidence that the oil spill consisted of three to five quarts of motor oil deposited in a parking space in a sloping area of the parking lot and that, when the spill was observed immediately after Johnson's fall, the oil was still running down the slope of the parking lot but had not yet run outside the limits of the marked parking space. We do not rely on the employee's opinion that the oil had been running down the slope for less than five minutes before he observed it. See *Ginn v. Morgan,* 225 Ga. 192, 193 (167 SE2d 393) (1969) (opinion evidence alone will not support an award of summary judgment). Autozone also produced the affidavit of an employee who stated that 15 to 20 minutes prior to Johnson's fall he was working in the parking lot, could have seen the oil from where he was working, but did not see any oil on the ground at that time. Although this affidavit was not evidence of periodic inspection procedures, it was additional evidence showing that the spill had existed in the parking lot for no more than a short period of 15 to 20 minutes

prior to Johnson's fall.

Although showing that a foreign substance was not discovered despite compliance with reasonable inspection procedures is one method of demonstrating lack of constructive knowledge (see *Mallory v. Piggly Wiggly Southern,* 200 Ga. App. 428, 430 (408 SE2d 443) (1991)), it is not always necessary for the proprietor to show compliance with reasonable inspection procedures to establish a lack of constructive knowledge. In seeking summary judgment, the proprietor may also produce evidence, as Autozone did in this case, that the foreign substance had not been on the premises long enough to have been discovered by a reasonable inspection, regardless of whether inspection procedures had been instituted and complied with. Or the proprietor may simply point out the absence of any evidence in the record showing that the foreign substance had been on the premises for a period of time sufficient to have been discovered by a reasonable inspection of the premises. *Lau's Corp.,* supra.

The testimony of Johnson's friend that she saw tire tracks and footprints in the puddle of oil did not contradict the evidence produced by Autozone. The existence of tire tracks and footprints in the puddle but not leading away from it is not evidence that the puddle had been there for a period of time in excess of that shown by Autozone. Rather, it suggests that the third party who deposited the motor oil stepped in it, then got in a car and drove through the puddle without leaving footprints away from it. See *Queen v. Kroger Co.,* 191 Ga. App. 249, 250 (381 SE2d 413) (1989) (the fact that grapes were "smashed" on the floor of the store provided no indication of the length of time they had been on the floor before the plaintiff fell).

Autozone produced evidence that the oil spill had existed for no more than 15 to 20 minutes prior to Johnson's fall. There was an absence of any evidence to the contrary or any evidence otherwise showing that the oil spill had been on the premises for a period of time sufficient to have been discovered by a reasonable inspection. There was no evidence that this type of spill had previously occurred in the parking lot or that the parking lot was unusually dangerous requiring a continuous patrol to maintain it in a safe condition. Accordingly, there was no evidence that Autozone had actual or constructive knowledge of the oil spill. The trial court correctly granted summary judgment in favor of Autozone.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn and Smith, JJ., concur. Ruffin, J., concurs specially. McMurray, P. J., dissents.*

RUFFIN, Judge, concurring specially.

I concur in the judgment, but I continue to be puzzled by how questions of negligence can be resolved on motions for summary judg-

ment. Given that these kinds of cases are highly fact-intensive, the Bench and Bar can continue to expect hodge-podge results in slip and fall cases. If there is a case for summary disposition, this case is one. Johnson should have been able to see a large dark puddle of oil in the parking area, and there was no evidence of Autozone's actual or constructive knowledge of the oil in the area. Accordingly, I concur with the majority.

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent, as it is my view that genuine issues of material fact remain as to Autozone's constructive knowledge of the oil slick that was in the handicapped parking space of its store. By saying otherwise, I believe the majority (1) unduly discounts evidence that an Autozone employee *actually examined the hazard area* just before Connie Johnson's fall, and (2) erroneously concludes (as a matter of law) that Autozone exercised ordinary care in preparing and making ready a reasonably safe environment for its customers. OCGA § 51-3-1; *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1, 2 (1) (432 SE2d 230); *Burke v. Bi-Lo, Inc.*, 212 Ga. App. 115, 116 (441 SE2d 429). I believe that the majority's holding, absent proof of Autozone's compliance with a routine safety inspection plan on the day of Johnson's injury, is nothing more than another inroad into the jury's province under circumstances where the issue of due care is not so "plain and palpable [so as to authorize a finding that] 'reasonable minds cannot differ as to the conclusion to be reached.' [*Pound v. Augusta National*, 158 Ga. App. 166, 167 (279 SE2d 342).]" *Lau's Corp. v. Haskins*, 261 Ga. 491, 493 (2) (405 SE2d 474).

1. "Constructive knowledge by an owner or occupier of the foreign substance can be established in one of two ways. First, '(c)onstructive knowledge may be inferred where there is evidence that an employee of the owner was in the immediate vicinity of the dangerous condition and could easily have noticed and removed the hazard.' *Food Giant v. Cooke*, 186 Ga. App. 253, 254 (366 SE2d 781) (1988); see also *Sain v. K-Mart Corp.*, 190 Ga. App. 751, 752 (380 SE2d 299) (1989)." *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 809 (406 SE2d 234).

In the case sub judice, Teresa Cox not only testified that she accompanied Connie Johnson to the Autozone store where Connie Johnson parked next to the store's handicapped parking space (which was obviously close to the store entrance), Cox explained that, before Johnson exited the car, she (Cox) observed a man walk through the parking lot, stop next to the car and inspect the ground near where the oil slick was later discovered. Although Cox could not identify this man by name, she testified that the man was *not* walking from an area of the parking lot nearest the store's entrance (as would a cus-

tomer), but that he was walking away from the area of a blue truck that was parked at the rear of the store. She also testified that the man was carrying a "coke" and a restaurant-type "bag" into the auto parts store; that "[h]e had a little black moustache and . . . black hair" and that he was wearing either a "blue" or a "red" shirt.

Autozone employee Joseph Samuel Lee deposed that all Autozone salesmen are required to wear "red" shirts and that both he and Douglas A. Hoven (the only other Autozone employee on duty) were wearing such "red" shirts on the night Connie Johnson fell. And while both Lee and Hoven deposed that they did not see the oil slick before Johnson's fall, neither man denied that he was the person Teresa Cox saw examining the ground near the oil slick. Further, neither deponent denied matching the physical description of the man Cox saw on the night of the fall. Under these circumstances, I do not believe Autozone conclusively negated Connie Johnson's claim (as well as her proof) that an Autozone employee examined the parking area near where she fell, but failed to exercise reasonable care in carrying out the inspection. See *Baldwin County Hosp. Auth. v. Coney*, 188 Ga. App. 339 (1) (373 SE2d 252). Consequently, I believe that genuine issues of material fact remain under the first prong of the constructive knowledge test, i.e., a jury must decide whether the "red" or "blue" shirted man was an Autozone employee (on his way back to work with dinner), and thus whether Autozone had constructive knowledge of the oil slick in the handicapped zone.

2. "The second basis for liability based on constructive knowledge is that the owner failed to exercise reasonable care in inspecting the premises. 'To sustain a cause of action in the latter type case the plaintiff must show that the foreign substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant. (Cit.)' *Alterman Foods[ v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327)]; see also *Food Giant[ v. Cooke]*, supra; *Mitchell v. Rainey*, 187 Ga. App. 510 (370 SE2d 673) (1988); *Fulton-DeKalb County Hosp. Auth. v. Estes*, 187 Ga. App. 120 (369 SE2d 262) (1988). This part of the test focuses on whether the foreign substance was on the premises long enough that the owner should have known of it." *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 809, supra. And to negate any such imputed knowledge upon summary adjudication, this Court has held that the proprietor must produce conclusive proof that a customary inspection and cleaning program was in place and was being employed on the specific day of the injury. See *Mallory v. Piggly Wiggly Southern*, 200 Ga. App. 428, 430 (1) (408 SE2d 443). But "in the absence of any evidence that [the proprietor] conducted a reasonable inspection of the premises prior to the fall, [this Court has just as firmly held that the customer is] not required to establish how long the spill remained on the [premises]. *Jackson v. Wal-Mart Stores*,

206 Ga. App. 165, 169 (424 SE2d 845) (1992)." *Burke v. Bi-Lo, Inc.*, 212 Ga. App. 115, 117, supra.

In the case sub judice, Autozone presented no proof regarding inspection procedures at its store. Nonetheless, a majority of this Court now says it does not matter. According to the majority, all that is necessary to negate the possibility that the proprietor did not exercise reasonable ordinary care in preparing and making ready a reasonably safe environment for its customers is the production of an affidavit, wherein an employee deposes that he ranged in an outward vicinity of the hazard area (while assisting another customer) 15 to 20 minutes before the alleged injury and did not then see the hazard which allegedly caused the plaintiff's fall. This *ultra* light burden on summary judgment granted by the majority not only ignores unanswered questions regarding the circumstances and perspective of the employee's observations, I believe it effectively destroys any incentive for proprietors to carry out routine inspections so as to satisfy their burden to prepare and make ready a reasonably safe environment for customers. See OCGA § 51-3-1; *Burke v. Bi-Lo, Inc.*, 212 Ga. App. 115, 116, supra. In fact, the majority's reasoning appears to be in direct conflict with Judge Blackburn's recent decision in *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1, 2 (1), supra.

In *Thompson*, that plaintiff alleged that those defendants failed to inspect their premises to discover an alleged defective condition prior to her fall. This theory, as is the theory in the case sub judice, was " 'premised upon defendant(s') failure to exercise reasonable care in inspecting and keeping the premises in a safe condition. The issue thus [became] whether the affidavit(s) executed by defendant(s) [negated] recovery of that theory.' (Citations and punctuation omitted.) *Flood v. Camp Oil*, 201 Ga. App. at 453. [Just as Autozone did in the case sub judice, the] affidavits presented on behalf of the defendants [in *Thompson*], [did] not allege any practice to inspect the premises at all, let alone to inspect on a routine basis that would allow for the discovery of defective conditions." Id. at 2 (1), 3, supra. As a consequence, this Court found that those defendants failed to negate the possibility that they had not exercised reasonable care in inspecting the premises and therefore held that the burden never shifted to plaintiff to produce evidence that the defective condition had been present for a period of time sufficient to have been discovered by a reasonable inspection procedure. Id. For the same reasons, I would reverse the trial court's order granting summary judgment in the case sub judice.

"An owner/occupier of premises has a duty to keep those premises safe for its invitees. OCGA § 51-3-1; *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1 (432 SE2d 230) (1993). 'An invitee enters upon the premises under an implied representation, or assurance, that the

land has been prepared and made ready and safe for his reception. The invitee is entitled to expect the possessor will exercise reasonable care to make the land safe for his entry. (Cit.) It is this implied representation that is made to the public, by holding the land open to them, that it has been prepared for their reception, that it is safe, that is the basis for the possessor's liability. (Cit.)' *Begin v. Ga. Championship Wrestling*, 172 Ga. App. 293, 294 (322 SE2d 737) (1984)." *Burke v. Bi-Lo, Inc.*, 212 Ga. App. 115, 116, supra.

In the case sub judice, the specific evidence the majority relies on in saying that Autozone conclusively proved that it exercised reasonable care in making its premises safe are affidavits from the only two employees on duty at the time Connie Johnson fell, Joseph Samuel Lee and Douglas A. Hoven. Hoven deposed that "I had gone out to the parking lot 15-20 minutes before this incident to measure some windshield wipers on a customer's car[, and although] I could have seen the oil spill from where I was working at this customer's car, I did not see any oil on the ground at that time." And Lee deposed that "[a]t around 6:30 p.m. on December 31, 1992, [over an hour before Connie Johnson fell,] I had gone out to the parking lot to change the headlight bulbs on a customer's car[, and that although] I could have seen the oil spill from where I was at this customer's car, I did not see any oil on the ground at that time." However, neither Hoven nor Lee explained the distance or clarity of the perspective to the area of the oil slick, and it appears to be undisputed that neither man was in the parking lot to execute a safety-inspection of the premises. Both men were occupied with customers.

On summary judgment, it is this Court's duty to give the non-moving party the benefit of every doubt, indulging her with every inference which can reasonably be drawn from the evidence. *Winn-Dixie of Greenville v. Ramey*, 186 Ga. App. 257, 258 (1) (366 SE2d 785). From this perspective, I believe the circumstances in the case sub judice would authorize a jury's finding that Autozone breached its implied representation to Connie Johnson that its store's parking lot was prepared for her reception and that it was safe. See *Burke v. Bi-Lo, Inc.*, 212 Ga. App. 115, 116, supra. And a basis for such a conclusion may not only flow from proof regarding the lack of safety-inspection procedures at the Autozone store, but also from proof that Autozone provided only two employees to service a large auto parts store during the holiday season in Carrollton, Georgia. Under such circumstances, it would be easy to see how Joseph Samuel Lee and Douglas A. Hoven missed the person (presumably a customer) *who set up shop in the store's handicapped parking space*, drained three to five quarts of oil (as estimated by Hoven) onto the pavement and replaced the oil with a fresh product that was presumably just purchased from the Autozone store.

DECIDED NOVEMBER 9, 1995 —
RECONSIDERATION DENIED DECEMBER 6, 1995 — 

*Jack F. Witcher*, for appellant.
*Swift, Currie, McGhee & Hiers, Bradley S. Wolff*, for appellee.