## A97A2360. McCULLOUGH v. KROGER COMPANY.
(498 SE2d 594)

BLACKBURN, Judge.

Wanda McCullough appeals from the trial court's order which granted summary judgment to the Kroger Company (Kroger) on her claim for damages resulting from her fall on a grape in the produce aisle of Kroger.

In accordance with *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991), the facts, and all reasonable inferences from the facts, must be viewed and considered in the light most favorable to the plaintiff herein. Furthermore, our Supreme Court took action in *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), to "remind members of the judiciary that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable and undisputed." Id. It is plain and palpable, and should be undisputed, that the case now before us is one for the jury.

Viewing the facts in a light most favorable to the nonmovant, plaintiff herein, McCullough slipped on a grape lying on the floor of an aisle down which a Kroger employee, Bridges, had pushed a cart loaded with crates of grapes up to the level of his nose. Later, while he was still stacking bunches of grapes on a produce display island approximately ten to fifteen feet from McCullough, Bridges saw McCullough pass by on the opposite side of the cart and fall. Although Bridges testified that his view of the floor where McCullough fell was apparently blocked by the cart of grapes, McCullough testified that she believed that Bridges could have seen the area

where she fell from where he was standing. No other customers were in the area where McCullough fell. Bridges admitted that, during stocking, grapes "were always falling off" the bunch, although on the day in question he contends no grapes fell onto the floor. When Bridges later told the produce manager about McCullough's fall, the produce manager told him "to watch out for stuff like that because it's hard to keep grapes off the floor." Furthermore, according to Brower, Kroger's manager, there would have been other employees, including customer service representatives, in the store at the time of the fall who could have seen the area in which it occurred. Finally, although Brower did testify that Kroger has a courtesy clerk whose duties include cleaning the store's floors, she further testified that such clerks do not log in the times that they perform their various tasks. As such, there was no evidence establishing when or if Kroger's courtesy clerk inspected the floor where McCullough fell. Kroger produced no affidavit from any courtesy clerk establishing that the floor had been swept, when it was swept, or that no grape was on the floor. The burden was on Kroger to produce such evidence, and it has failed to do so.

As an initial matter, simply because McCullough was pushing her cart straight ahead and looking in front of her, not at the floor, does not make this a case appropriate for summary adjudication. In *Robinson*, our Supreme Court disapproved of the "appellate decisions which hold as a matter of law that an invitee's failure to see before falling the hazard which caused the invitee to fall constitutes a failure to exercise ordinary care." Id. at 743. This Court is not authorized to ignore the holdings of our Supreme Court.

Summary adjudication is also inappropriate in this case because the evidence authorizes a finding that the defendant had superior knowledge of the object which caused the plaintiff's fall. McCullough presented sufficient evidence here to show that Kroger, through Bridges, had constructive knowledge of the fallen grape. "Constructive knowledge of a foreign substance may be shown by evidence that the foreign substance had been on the floor for a sufficient period of time that in the exercise of ordinary care, the defendant should have noticed and removed the hazard *or by evidence that the defendant had an employee in the immediate area of the hazard who could have easily seen and removed the hazard before the plaintiff's fall.*" (Emphasis supplied.) *Haskins v. Piggly Wiggly Southern,* 230 Ga. App. 350, 351 (496 SE2d 471) (1998).

Based on the facts set out above, it is a reasonable inference that the dropped grape which caused McCullough's fall came from the cart of grapes Bridges had pushed down the aisle. As a matter of straightforward logic, the grape had to have come from somewhere. There was no other customer in the aisle. The cart piled high with

bunches of grapes being pushed by Bridges is the most likely source of the errant grape. The fact that Bridges may not have seen the grape because he was on the far side of the cart in no way refutes the reasonable inference to be drawn. At a minimum, there is a factual issue for jury determination. It is the duty of this Court to follow the mandate of our Supreme Court to leave generally to juries questions of the negligence of the parties. Therefore, the trial court erred in granting Kroger's motion for summary judgment.

*Judgment reversed. McMurray, P. J., Pope, P. J., Beasley, Johnson and Smith, JJ., concur. Andrews, C. J., dissents.*

ANDREWS, Chief Judge, dissenting.

Because I disagree with the majority, I must vigorously dissent.

In addition to the facts set out in the majority and viewing the evidence with all inferences in favor of McCullough, the following facts are pertinent. McCullough had been shopping at Kroger, where she regularly shopped, about 20 or 30 minutes on a Sunday evening. As she stated, "I was pushing my cart straight ahead. . . . I was looking straight ahead in the direction I was going." Nothing obstructed her view of the area or prevented her from looking at the floor. The "next thing I knew I was falling, fell. . . ." After the fall, she saw the remains of a grape on her shoe and the floor. She described it as "the pulp, the slimy pulp, and parts of the exterior of the grape. Clear enough to identify it was a grape. . . . The pulp was kind of slimy. . . . *It was clear* with a tinge of . . . *let's say clear.*" (Emphasis supplied.) She was unsure if she could have seen the grape before falling even if she had been looking at the floor, obviously because it was CLEAR.

Bridges' procedure in placing grapes into the produce section from the cart was to lift a bunch of grapes out of its crate, place a piece of paper under it, and then place it on the produce island. As he described the scene, "[t]he produce island was right behind me and *the cart was right in front of me and I was in between the two and she was walking down the aisle on the outside.*" (Emphasis supplied.) He saw her walking by in front of the cart and "the next thing I didn't see her anymore." From his position behind the cart stacked with crates, he could not see the spot where she slipped immediately before she fell. He had, however, rolled the cart with the crates across the area where she fell approximately five minutes before and had seen nothing on the floor. Had he seen anything on the floor, he would have picked it up. He did not drop any grapes during his stocking and he could not tell from examining the remains whether the grape was already mashed when McCullough slipped on it or whether her fall mashed it.

Manager Brower was summoned after the fall and described the

remains of the grape as "a smushed-type, *clearish. . . . The smushed part blended in with the floor, . . .* on the outside of it you could see, . . . , the green outside of it, but the majority of it was smushed so *it was almost translucent.*" (Emphasis supplied.)

There were inspection procedures used by this store. One individual per shift is designated as the "cleanup shift" whose duties are to empty trash, clean bathrooms, clean up any spills in the store, and do floor sweeps throughout the store, which had been done that Sunday.

Although not referred to at all by the majority, *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980), which was reaffirmed in this respect in *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), sets out the legal standard for determining liability in these cases. There, "[t]he court reiterated . . . , among other things, the statutory principle that an owner or occupier of land is charged with exercising *ordinary care to keep the premises safe (OCGA § 51-3-1), and the fundamental basis for an owner or occupier's liability — that party's superior knowledge of the hazard encountered by the plaintiff.* The court stated that an invitee might recover for personal injury suffered in a slip and fall 'only when the perilous instrumentality is known to the owner or occupant and not known to the person injured. . . .' Id. at 622." (Emphasis supplied.) *Robinson*, supra at 736.

Considering *Alterman* in light of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), with regard to the allocation of the burden of coming forward with evidence on a summary judgment motion, *Robinson* stated that "[a] slip-and-fall plaintiff need not necessarily produce evidence which disproves the plaintiff's negligence to withstand a motion for summary judgment — the burden of coming forward with such evidence arises only after it has been established or assumed the defendant had actual or constructive knowledge of the hazard, and the defendant presents evidence that the plaintiff's injuries were proximately caused either by the plaintiff's voluntary negligence . . . or by the plaintiff's casual negligence. . . . In this way, the defendant has the evidentiary burden as to the issue of the plaintiff's negligence *after it has been established or assumed for purposes of a motion for summary judgment that the defendant was negligent, i.e., that the defendant had actual or constructive knowledge of the existence of a hazard on its premises.*" (Emphasis supplied.) *Robinson*, supra at 747-748.

This case, therefore, deals with the first prong of *Alterman*, as fully discussed in *Robinson*, supra. Since, in *Robinson*, "the focus of the Supreme Court's analysis of the burden of proof in slip and fall cases was on the second prong of the elements of a foreign substance slip and fall cause of action concerning the plaintiff's knowledge of the foreign substance (see *Alterman Foods*[, supra]) and not the

defendant's actual or constructive knowledge of the foreign substance which falls within the first prong[,] we find the Supreme Court's decision in *Robinson* did not change either the first prong of a plaintiff's cause of action under *Alterman Foods* or the burden on movants for summary judgment on the first prong as established in *Lau's Corp.*[, supra]." *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 680 (498 SE2d 748) (1998).

There was no actual knowledge shown on the part of Kroger regarding the errant grape. Constructive knowledge can be shown by showing 1) that the foreign object had been on the premises for such a time that ordinary diligence by the owner/occupier should have resulted in its discovery or 2) that an employee was in the immediate vicinity of the hazardous condition and could have easily seen the substance. *Haskins v. Piggly Wiggly Southern*, 230 Ga. App. 350 (496 SE2d 471) (1998); *Hornbuckle Wholesale Florist v. Castellaw*, 223 Ga. App. 198, 199 (477 SE2d 348) (1996); *Drake v. Kroger Co.*, 213 Ga. App. 72, 73 (1) (443 SE2d 698) (1994).

Here, plaintiff produced no evidence concerning the length of time during which the grape had been on the floor and acknowledged that she did not know how long it had been there. Kroger, on the other hand, showed that, when Bridges had traversed the area approximately five minutes before the fall, there was no grape. Therefore, McCullough has failed to show constructive knowledge by this method. *Haskins*, supra; *Hornbuckle*, supra; *Jenkins v. Bi-Lo*, 223 Ga. App. 735 (479 SE2d 14) (1996).

Plaintiff's only evidence of constructive knowledge is the physical proximity of Bridges to the grape. The fact that Bridges was in the area does not, alone, establish constructive knowledge, because it must also be shown that the employee "could have easily seen and removed the hazard before the plaintiff's fall." *Haskins*, supra at 351. The grape was described by those who saw it as "clear" and "almost translucent" and blending in with the floor. If McCullough, who acknowledged that her view of the floor in front of her was not obstructed, as was Bridges' view, did not know if she could have seen the grape had she been looking at the floor, it is impossible to infer, as does the majority, that Bridges could have "easily" seen and removed the grape. Here, as in *Jenkins*, which involved string beans, which are generally present and displayed in produce sections, under the evidence presented, the grape could as easily have fallen to the floor "mere seconds" before McCullough fell, since customers can and do, as stated by the witnesses, also drop grapes on the floor.

Also, even if plaintiff were able to show that Bridges should have seen the grape, "she must show that she was being careful and still failed to see the [grape] as she approached. . . . As this is a logical impossibility, the trial court did not err in granting summary judg-

458

ment for defendant. Cf. *Moore v. Kroger Co.*, 221 Ga. App. 145, 147 (470 SE2d 529) (1996) (if a grape on the floor should have been visible to a store employee six to eight feet away, it should have been visible to the plaintiff)." *Whisby v. Bruno's Food Stores,* 228 Ga. App. 597, 598 (492 SE2d 338) (1997) (Pope, P. J.).

Inasmuch as there is *no* evidence which would permit a jury to find that Kroger had knowledge of the grape superior to that of McCullough, this is one of those "plain, palpable and undisputable" cases where summary judgment in favor of the owner/occupier was appropriate. *Haskins,* supra; *Jenkins,* supra; see *Kolomichuk v. Bruno's, Inc.,* 230 Ga. App. 638 (497 SE2d 10) (1998). Holding otherwise, as does the majority, makes the owner/occupier an insurer of the safety of its customers which *Robinson* reiterates is not the standard. "While not an insurer of the invitee's safety, the owner/occupier is required to exercise *ordinary care* to protect the invitee from *unreasonable risks of harm of which the owner/occupier has superior knowledge." Robinson,* supra at 740.

DECIDED MARCH 20, 1998.

*Buzzell, Graham & Welsh, Stephen M. Welsh,* for appellant.
*Webb, Carlock, Copeland, Semler & Stair, Matthew L. Hilt, Douglas A. Wilde,* for appellee.